**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 10-60766-CIV-COHN/SELTZER**

AMERIPATH, INC.,

       Plaintiff,

vs.

DR. ROBERT WESLEY WETHERINGTON, et al.,

       Defendants.

_____/

**DEFENDANT DR. WETHERINGTON'S OPPOSITION
TO PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION**

Defendant Dr. R. Wesley Wetherington, M.D. ("Dr. Wetherington"), subject to his pending Motion to Dismiss and Motions to Transfer or Stay, opposes Plaintiff AmeriPath's Motion for Temporary Injunction [DE 1(3)] ("TI Motion"), as follows:

## I.      INTRODUCTION

AmeriPath tells this Court that Dr. Wetherington remains its employee, while telling the rest of the world just the opposite.  AmeriPath tells this Court that its principal place of business is in Florida, while telling the Florida Secretary of State that its principal place of business is actually in New Jersey.  AmeriPath hands Dr. Wetherington a letter stating that "we will let you know shortly if your services will be further required," while demanding that he leave the premises immediately.  AmeriPath complains to this Court that Dr. Wetherington is misappropriating its confidential information and Trade Secrets when it has taken no reasonable steps to restrict the disclosure and use of information which it claims is protected.

It is therefore not surprising that AmeriPath seeks to enforce restrictive covenants contained in an employment agreement it has already breached.  These breaches preclude enforcement of the restrictive covenants at issue even under Florida law, and the covenants are otherwise vastly overbroad and unenforceable beyond any legitimate business interest of AmeriPath.  Equally unsurprising is AmeriPath's failure to prove: (1) its likelihood of success on the merits, (2) that it is suffering irreparable injury, (3) that an injunction would serve the public interest or (4) that the balance of equities favors an injunction.  Dr. Wetherington's termination on April 13, 2010 relieved him of any fiduciary duty or duty of loyalty owed to AmeriPath.  Plaintiff's Motion for a Temporary Injunction should therefore be denied.

## II.     STATEMENT OF FACTS

### A.     Dr. Wetherington's Employment with AmeriPath

Dr. Wetherington specializes in the medical practice of dermatopathology. DE1(2) (Compl. ¶13); (Affidavit of R. Wesley Wetherington ¶2, attached as Exhibit A). Dermatopathology is the microscopic evaluation of skin, hair, and nails for the diagnosis of cancer, diseases and other conditions to enable the referring physician to provide adequate and proper treatment for the patient.  (Wetherington Aff. ¶2).  AmeriPath is engaged in the business of providing Dermatopathology services through its Dermpath division, and is engaged in many other businesses as well.  Outside of the Dermpath division, AmeriPath provides services related to gastroenterology, urology, oncology and women's health.  (*Id.* ¶3).

B.    **The Agreement**

On April 19, 2002 Dr. Wetherington executed an employment agreement (the "Agreement") with AmeriPath to serve as Medical Director of the Dermpath practice in Marietta, Georgia, a suburb of Atlanta (the "Atlanta Practice"). DE 1(2) (Compl. ¶13). The Agreement ran initially for five years from July 1, 2002 and to June 30, 2007. (Compl., Exh. A (Employment Agreement ("Agreement") ¶2)). The Agreement renews automatically for one-year terms unless AmeriPath gives notice of non-renewal at least 60 days prior to the end of the term then in effect. (*Id.*). During the second extension (i.e. into year 7 or through June 30, 2009), Dr. Wetherington expressed his dissatisfaction with changes in the operation of the Atlanta Practice imposed by AmeriPath's new owner, Quest Diagnostics ("Quest").[1] (Wetherington Aff. ¶7). Although Dr. Wetherington never agreed to the terms of a new contract, AmeriPath contended that the Agreement was extended for an eighth year (actually for a year and one month) through July 30, 2010. (*See Id.* ¶8).[2]

Sections 19 and 20 of the Agreement contain a number of restrictive covenants which can be described as covenants of non-competition, non-solicitation or hybrids of

---

[1] When Dr. Wetherington signed the Agreement in 2002, AmeriPath was an independent corporation. (Wetherington Aff. ¶7). AmeriPath was initially sold to an investment group, Welch Carson, and again sold to Quest, which is based in New Jersey. (*Id.*). After that acquisition, Dr. Wetherington's reporting structure increasingly shifted from AmeriPath to Quest executives in New Jersey. (*Id.*).

[2] AmeriPath contends (though admittedly with some reservations) that the Agreement remains in effect until July 30, 2010, apparently relying on Steven Casper's letter to Dr. Wetherington dated September 16, 2009. (TI Motion at 2, ¶3; Wetherington Aff. Exh. 1). While Casper contends that the third extension runs through July 30, 2010, this is quite simply a mistake. If there was a third extension, it runs only until June 30, 2010 according to the unambiguous terms of the Agreement. (Agreement ¶2).

the two.   These provisions are extremely overbroad and are not reasonably tailored to protect AmeriPath's legitimate business interest.  For example, the covenants would prevent Dr. Wetherington from working outside the field of dermatopathology and for clients who are "located in, provide services in or does any business whatsoever in the State of Georgia."  (TI Motion at 2, ¶3).

**C.** **AmeriPath Cuts Dr. Wetherington's Bonus in Violation of the Agreement**

In 2009, after AmeriPath was sold to Quest, Quest implemented a new policy limiting entertainment expenditures (which are spent to build relationships with physician clients) to a certain amount per physician client per year.  (Wetherington Aff. ¶9).  Consistent with Quest's new budget, Dr. Wetherington's sales representative took a physician client to dinner.  (*Id.* ¶9).  However, unbeknownst to Dr. Wetherington, the physician client had previously gone to dinner with others from AmeriPath's National marketing department in Dallas, Texas.  (*Id.* ¶10).  AmeriPath arbitrarily refunded all Medicare revenue received through this physician client and deducted this amount from the operating income of the Atlanta Practice.  In turn, this reduced Dr. Wetherington's bonus by $6,661.  (*Id.*).  Dr. Wetherington did not consent to this adjustment, which was not authorized by any provision of his Agreement.  (*Id.*).

**D.** **AmeriPath Terminates Dr. Wetherington's Employment**

AmeriPath terminated Dr. Wetherington in person at the Atlanta Practice office on April 13, 2010.  (Wetherington Aff. ¶11).  AmeriPath stated in its termination letter, falsely, that it was still considering whether or not Dr. Wetherington's services would be necessary.  (*Id.*, Exh. 3).  At the time of Dr. Wetherington's termination on April 13, AmeriPath demanded that he gather his personal belongings and leave the premises of

the Atlanta Practice.  (*Id.* ¶12).  Dr. Wetherington explained that he had several complex

cases pending and requested that he be allowed to complete those before leaving.

(*Id.*).  AmeriPath refused to allow Dr. Wetherington to finish those readings and

escorted him out of the office.  (*Id.*).  Dr. Wetherington was not allowed to collect his

personal belongings or say farewell to his colleagues, some of whom he had worked

with since starting the Atlanta Practice in 2002.  (*Id.*).

E.    **AmeriPath Treats Dr. Wetherington as Terminated**

Following the April 13 termination, AmeriPath has continued to bar Dr.

Wetherington from accessing the premises of the Atlanta Practice.  (Wetherington Aff.

¶13).  AmeriPath refuses to return Dr. Wetherington's personal books and journals as

well as valuable teaching slides which are useful in making diagnoses.  (*Id.*)  AmeriPath

has also prevented Dr. Wetherington from accessing the web portal containing his

compensation records and other employment information.  (*Id.*)  AmeriPath has not

addressed these failures despite repeated requests from Dr. Wetherington or

Defendant's counsel.[3]

AmeriPath does not tell the same story to third parties as it tells the Court about

Dr. Wetherington's employment status.  Less than two weeks ago it told the organizer of

a conference where Dr. Wetherington had been scheduled to speak that he "is no

---

[3] Efforts by Dr. Wetherington's counsel to resolve these issues are contained in correspondence attached to the Affidavit of Charles A. Hawkins (attached as Exhibit B). Dermpath HR Director Sharon Sutton expressly declined Dr. Wetherington's request to restore his access to the web portal on May 14, 2010, and claimed that a response was forthcoming from AmeriPath's counsel on the issue of returning the books and slides. (Wetherington Aff. ¶13).  As of the morning of May 25, Dr. Wetherington's counsel still had not received any response on this and several other outstanding issues, some of which were raised by Defense Counsel as early as April 22, 2010. (Hawkins Aff. ¶4).

longer employed by Dermpath Diagnostics...." (Declaration of Charles B. Dillehay ¶4, attached as Exhibit C). Even worse, AmeriPath has suggested in a letter to the physician clients of the Atlanta Practice that Dr. Wetherington was removed as part of a plan to improve service at the Atlanta Practice. (Pritzker Aff. at Exh. A). Rather than honestly and simply rejecting Dr. Wetherington's overtures about returning to work as the Medical Director of the Atlanta Practice, AmeriPath has sabotaged that prospect by demanding unreasonable conditions to even discussing the subject.[4]

Contrary to the unsubstantiated claims of AmeriPath, Dr. Wetherington never solicited any of AmeriPath's physician clients. AmeriPath's motion before this Court contains nothing more than speculation regarding how and why clients have ceased doing business with the Atlanta Practice. *See* DE 1(3) (TI Motion at 9-11). In fact, clients of the Atlanta Practice initiated discussions with Dr. Wetherington once they had learned of Dr. Wetherington's termination. (Affidavit of Stanley Katz, M.D. ¶4; Affidavit of W. Derrick Moody, M.D. ¶4; Affidavit of Neville G. Pereyo, M.D. ¶4; Affidavit of Adam

---

[4] Dr. Wetherington communicated his proposal on this issue by letter dated April 22, 2010. (Hawkins Aff., Exh. 1). AmeriPath's Georgia counsel responded on April 26, 2010 that AmeriPath would be "willing to discuss" Dr. Wetherington's return to work on the condition that he make certifications under oath as to nine (9) separate matters, some of which AmeriPath knew or should have know were simply untrue. For example, AmeriPath conditioned even discussing Dr. Wetherington's return on the condition that he certify that he had "no ownership or financial interest in any entity that competes or is being established to engage in any business that will compete with the business conducted by AmeriPath in Georgia." (Hawkins Aff., Exh. 2 at 3). Yet, AmeriPath already knew from the Complaint filed in Georgia by Dr. Wetherington on April 14 (and served on AmeriPath the following day) that Dr. Wetherington was, in fact, actively planning to compete with AmeriPath. (Id., Exh. 3). Moreover, by April 14, 2010 (the day after Dr. Wetherington's termination), AmeriPath had apparently already decided it would send a letter in the form attached to Dr. Pritzker's Affidavit informing physician clients that Dr. Wetherington was no longer the Medical Director and that "we wish him well in his future endeavors." (*See* Pritzker Aff. at Exh A).

S. Pritzker, M.D. ¶5; Affidavit of David E. Schoenfeld, M.D. ¶4).[5]  These physicians were never asked to enter into any sort of written agreement with AmeriPath/Dermpath in order to obtain the services of the Atlanta Practice.  Moreover, no one ever told them any information relating to their relationship with AmeriPath/ Dermpath was to be kept confidential.  (Katz Aff. ¶5; Moody Aff. ¶6; Pereyo Aff. ¶5; Pritzker Aff. ¶6; Schoenfeld Aff ¶5).  AmeriPath never expressed concerns to Dr. Wetherington that information about the terms and conditions of services provided to physician clients should be kept confidential.  (Wetherington Aff. ¶4).

E.    **Procedural Background**

AmeriPath initiated this lawsuit in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County on April 26, 2010, twelve days after Dr. Wetherington filed his complaint requesting declaratory relief in the United States District Court for the Northern District of Georgia.  Dr.  Wetherington removed the instant case to this Court on May 11, 2010 with the consent of co-Defendant Christian Stevens ("Stevens").  Dr. Wetherington's Motion to Dismiss [DE 3] and Motions to Transfer Venue or Stay [DE 4] are pending.

### III.    ARGUMENT AND CITATION TO AUTHORITY

AmeriPath alleges that Dr. Wetherington is breaching his fiduciary duties and duties of loyalty as a *current employee* of AmeriPath, along with his non-compete obligations under the Agreement.  (TI Motion at 13 (emphasis added)).  AmeriPath's allegations are without merit and must be denied because (1) Dr. Wetherington is *not* an employee of AmeriPath, (2) any breach of the Agreement occurred first by AmeriPath,

---

[5] The Physician Affidavits are attached as Exhibits D – H respectively.

(3) the restrictive covenants are overbroad and unenforceable under both Georgia and Florida law, and (4) AmeriPath fails to establish the necessary elements for this Court to grant the extraordinary relief that AmeriPath requests.

## A.      AmeriPath's Burden

A party seeking a preliminary injunction[6] must show "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).  Because a preliminary injunction is a drastic remedy which should be used sparingly, this Court should not issue a preliminary injunction unless AmeriPath clearly meets its burden of persuasion as to each of the four requisites.  *See Morgan Stanley DW, Inc., v. Frisby*, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001); *GPS Industries, LLC v. Lewis*, No. 8:09-CV-2507, 2010 U.S. Dist. LEXIS 17798, at *8 (M.D. Fla. Feb. 8, 2010)[7] (denying defendant employer's request for a preliminary injunction enjoining its former employee from disclosing confidential information and trade secrets, from competing against defendant, and from unfairly soliciting defendant's clients and employees).

## B.      AmeriPath's Tort Claims are Based on the False Premise that Dr. Wetherington Remains an Employee

AmeriPath's common law tort claims are all based on the presumption that Dr. Wetherington continues to remain employed after April 13, 2010.  However,

---

[6] Although AmeriPath filed its Motion initially in state court as one for a "Temporary Injunction," it would appear that the Parties and the Court agree the pending requested relief be heard under the preliminary injunction standard of Fed. R. Civ. P. 65(a).

AmeriPath's claim of "non-renewal" is a sham and its subsequent conduct is consistent only with a termination.

###### 1.    This is not a "Non-Renewal" under the Agreement.

On April 13, 2010, AmeriPath informed Dr. Wetherington that, pursuant to Section 2 of the Agreement, AmeriPath would not be renewing the Agreement.  Section 2 of the Agreement states that if notice of non-renewal is given, "then the Employee's employment will terminate on the Termination Date (or on such other date as the parties mutually agree)."  However, despite the express terms of the Agreement, AmeriPath did not allow Dr. Wetherington to continue his employment[8] until the Termination Date. Instead, and on the same day it provided notice, AmeriPath escorted Dr. Wetherington out of the Atlanta Practice office and told him not to return.

AmeriPath's actions demonstrate that Dr. Wetherington was, in fact, terminated on April 13, 2010.  In *Habif, Arogeti & Wynne, P.C. v. Baggett*, 498 S.E. 2d 346 (Ga. Ct. App. 1998), the employer "HAW" sued Baggett for breach of contract after he left his employment with HAW and joined a competitor.  HAW argued, in part, that Baggett remained an employee during the 60-day notice provision in an agreement and thus breached fiduciary duties owed to HAW.  *Id.* at 356.  Because there was evidence that HAW "immediately (i) asked [Baggett] not to return to the office, (ii) terminated his secretary, (iii) changed the office's locks and access code, and (iv) informed the clients whom Baggett serviced that he has resigned," there was a disputed fact as to whether Baggett was constructively discharged.  *Id.*  At a minimum, and as discussed in detail

---

[7] A copy of *GPS Industries, LLC v. Lewis* (an unpublished opinion) is attached as Exh. I.

below, AmeriPath's actions in this case create a question of fact about Dr.

Wetherington's employment status which precludes injunctive relief on AmeriPath's tort-

based claims.

>    **2.    AmeriPath Admits that Dr. Wetherington is a Former Employee.**

While AmeriPath repeats in its TI Motion that Dr. Wetherington is a "current

employee," it tells others just the opposite in an effort to gain a business advantage.

On May 14, 2010, Karen Carpentier, AmeriPath's Tradeshow Manager, in an effort to

displace Dr. Wetherington as a speaker at the upcoming summer conference of the

Georgia Association of Physicians, stated in no uncertain terms that "Dr. Wetherington

is no longer employed by Dermpath Diagnostics."  (Dillehay Decl. ¶4).  Similarly,

AmeriPath stated in a letter to the physician clients of the Atlanta Practice dated the day

after Dr. Wetherington's termination that he was "no longer the Medical Director," and

that Dermpath "wish[ed] him well in his future endeavors."  (Pritzker Aff. at Exh. A).

Moreover, AmeriPath has treated Dr. Wetherington as a terminated employee in other

ways, such as escorting him off the premises, preventing him from completing his

duties, and terminating his access to the company's web portal.  (Wetherington Aff.

¶¶12-13).  Accordingly, to the extent Dr. Wetherington owed any fiduciary duties or

duties of loyalty to AmeriPath, those duties were extinguished upon his termination.

*See L.A. Draper & Son, Inc. v. O'Callaghan*, 813 F.2d 332, 337 (11th  Cir. 1987) (if

acting in good faith and without fraud a former employee can engage in competition or

even injure a former employer); *Draim v. Virtual Geosatellite Holdings, Inc.*, 631 F.

---

[8] Under Section 1 of the Agreement, "employment" is defined as Dr. Wetherington
"rendering professional services as a Doctor of Medicine, specializing in
Dermatopathology."

Supp. 2d 32, 40 (D.D.C. 2009) (former employee did not owe a fiduciary duty following his termination where there was no evidence he used trade secrets to his advantage); *Instrument Repair Serv., Inc. v. Gunby*, 518 S.E.2d 161, 163 (Ga. Ct. App. 1999) (an employee upon termination of employment is entitled to immediately compete).

**B.**     **AmeriPath's Contract Claim is Precluded by its Prior Breach**

    **1.**     **AmeriPath Breached Section 2 of the Agreement.**

AmeriPath's TI Motion seeks to enforce an Agreement that was breached *first* by AmeriPath. Such a selective view of the parties' contractual obligations under the Agreement is not tolerated by Florida law. *See Bradley v. Health Coalition*, 687 So. 2d 329, 333 (Fla. 3d DCA 1997) (employer who materially breached the employment agreement cannot enforce restrictive covenants contained in the agreement); *see also* (TI Motion at 23 (citing *Bradley*)). By terminating Dr. Wetherington under the false premise of a non-renewal, AmeriPath materially breached the Agreement. AmeriPath's mischaracterization of Dr. Wetherington's termination as a "non-renewal" is an effort to avoid the 150-day severance provisions of Section 14(c) of the Agreement, which applies to terminations with cause by AmeriPath.[9] AmeriPath's efforts to avoid the

---

[9] The facts of this case are similar to those in *Ruffing v. Masterbuilt Tool & Die, LLC*, No. 1:08-CV-01264, 2009 U.S. Dist. LEXIS 4754 (N.D. Ohio Jan 23. 2009), where an employer attempted to utilize a "non-renewal" clause to avoid the payment of severance benefits. In *Ruffing*, an employee was under a one year employment contract which included both a "non-renewal" and a "termination" clause. *Id.* at *7. Employees terminated without cause under the contract were entitled to severance benefits. *Id.* at *9. The employer, without cause, declined to renew the contract and refused to pay severance, arguing that "non-renewal" did not come within the termination provision of the contract. *Id.* The court rejected this interpretation finding that it would render portions of the termination clause, which specifically provided for the payment of severance benefits if the employee was terminated without cause, as wholly illusory. *Id.* at *28. Instead, the court followed an interpretation that allowed for effectuation of all of the contractual provisions, mandating the payment of severance benefits. *Id.* at *28-29.

severance required by Section 14(c) are a breach of the Agreement.  If AmeriPath's broad interpretation of its rights under the non-renewal provision of Section 2 is correct, there is no need for Section 14(c).  This violates two fundamental principles of contract construction: (1) that a contract should be construed so as to give effect to all of its provisions, and (2) when a contract contains two provisions which could apply to a particular situation, the more specific of the two is the one that applies.  *See, e.g., Ruffing,* 2009 U.S. Dist. Lexis 4754, at *28-29.  Consequently, AmeriPath's attempt to enforce the restrictive covenants in the same Agreement that AmeriPath breached first should not be permitted.  *See Bradley,* 687 So. 2d at 332 ("A party is not entitled to enjoin the breach of contract by another, unless he himself has performed what the contract requires of him so far as possible; if he himself is in default or has given cause for nonperformance by defendant, he has no standing in equity.") (citations omitted).

### 2.      AmeriPath Failed to Pay Dr. Wetherington his Entitled Bonus.

AmeriPath's failure to pay Dr. Wetherington his entitled bonus is another material breach which precludes injunctive relief under the contract.  (See Wetherington Aff. ¶10).  Applying the law to facts similar to the instant case, Florida's Fourth DCA affirmed the denial of a temporary injunction in *Benemerito & Flores, M.D.'s, P.A., v. Zeidy Roche, M.D.*, 751 So. 2d 91 (Fla. 4th DCA 1999).  In *Benemerito*, the employer medical association sued a former employee physician to enforce a restrictive covenant.  At the temporary injunction hearing, the physician argued that the employment contract was breached first by the medical association which failed to fully compensate the physician according to the bonus provisions of the contract.  *Id.* at 92.  The contract provided for the physician to receive a bonus equal to the percentage of net fees she generated.  *Id.*

at 93.  Because there was evidence to show the medical association breached the contract by failing to pay the physician the full amount of bonus owed, the physician was relieved of complying with the restrictive covenants.  *Id.* (citing *Bradley*, 687 So. 2d at 333).  Thus, because AmeriPath breached the Agreement first, it cannot now seek injunctive relief under the same Agreement.

**C.**      **The Restrictive Covenants in the Agreement are Overbroad and Unenforceable**

In its TI Motion, AmeriPath states that Dr. Wetherington's Agreement "precludes him from competing with AmeriPath or soliciting AmeriPath employees in the State of Georgia during the course of his ongoing employment with AmeriPath, and for two years thereafter."  In fact, the covenants are much broader than that and would prohibit Dr. Wetherington from having "any interest whatsoever," in a competing business "which is located in, provides services in or does any business whatsoever in the State of Georgia."  (Agreement ¶19(c)(1)).  Put another way, Dr. Wetherington cannot work anywhere for any employer that has even incidental contact with the State of Georgia.

**1.      Under Georgia Law.**

Because Dr. Wetherington resides in Georgia, worked for AmeriPath in Georgia, and the restrictive covenants relate to business activity being conducted overwhelmingly in Georgia, Georgia law should be applied in determining the validity of the restrictive covenants at issue.  *See Trumpet Vine Inv., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1119 (11th Cir. 1996) (Florida has traditionally applied the *lex loci contractus* rule for choice of law determinations regarding contract law); *Motmanco, Inc., v. McDonald's Corp.*, No. 3:04-cv-270-J-99HTS, 2005 U.S. Dist. Lexis 33965, at *13 (M.D. Fla. Mar. 28, 2005) (holding that Illinois law applied in a breach of contract claim

brought in Florida because the contractual relationship centered in Illinois, the defendant's principal place of business was located in Illinois, and the agreement would have to be performed there).

Under Georgia law, restrictive covenants are disfavored and courts will therefore strictly scrutinize such agreements. *Keener v. Convergys Corp.*, 342 F.3d 1264, 1268 (11th Cir. 2003). The restrictive covenants in the Agreement are unenforceable according to well-established Georgia law. Most obviously, the covenants prohibit Dr. Wetherington from engaging in covered activity "as a shareholder, principal, agent, consultant, manager, advisor, director, officer, control person, operator, or in any other capacity or manner whatsoever," a prohibition that is clearly overbroad under Georgia law. *McNeal Group, Inc. v. Restivo*, 311 S.E.2d 831, 832 (Ga. 1984). This "in any capacity" provision "imposes a greater limitation upon the employee than is necessary for the protection of the employer and therefore is unenforceable." *Howard Schultz & Assoc. Se., Inc. v. Broniece*, 236 S.E.2d 265, 268 (Ga. 1977). As Georgia courts refuse to blue pencil restrictive covenants like those found in the Agreement, the entire provision must fail. *Advance Tech Consultants, Inc., v. Roadtrac, LLC*, 551 S.E.2d 735, 737 (Ga. Ct. App. 2001). Accordingly, AmeriPath's TI Motion seeking to enforce restrictive covenants must fail where they are overbroad and unenforceable as a matter of Georgia law.[10]

---

[10] Space considerations do not permit a full discussion of all the ways these covenants are unenforceable under Georgia law. Some of the other reasons are identified in Dr. Wetherington's FAC in the Georgia Action at ¶¶27-33 [DE 4(7)].

### 2.    Under Florida Law.

While Georgia law should be applied to the restrictive covenants at issue, even under Florida law the restrictive covenants are unenforceable as a matter of law.  "A restrictive covenant not supported by any legitimate business interest [is] unlawful and is void and unenforceable."  *See GPS Industries,* 2010 U.S. Dist. LEXIS 17798, at *12. AmeriPath's conclusory statements that client contact information, business information, financial agreements, and pricing models all constitute protectable interests are without merit.  (TI Motion at 8); *GPS Industries,* 2010 U.S. Dist. LEXIS 17798, at *18-19 (customer and pricing lists and business plans are not protectable interests).  Because AmeriPath has failed to establish a valid protectable interest under Florida law, the covenants AmeriPath seeks to enforce are unenforceable.

Even if AmeriPath has established a protectable interest, the restrictive covenants at issue fail because the geographic scope is impermissibly overbroad.  If enforced, the covenants at issue would prohibit Dr. Wetherington working anywhere for any employer that has even incidental contact with the State of Georgia.  (*See* Agreement ¶19(c)(1)).  This is effectively a global geographic restriction which is not reasonably necessary to protect any legitimate business interest.[11]  *See GPS Industries,* 2010 U.S. Dist. LEXIS 17798, at *18-19 (unlimited geographic scope of restrictive covenant was overbroad and thus unenforceable).

---

[11] Florida's restrictive covenant statute also provides that in determining whether a restrictive covenant is enforceable, courts "[s]hall consider the effect of enforcement upon the public health, safety, and welfare."  Fla. Stat. § 542.335(g)(4).  AmeriPath is required to establish that the covenant it seeks to enforce does not threaten public safety, health, or welfare, in light of the compelling need for Dr. Wetherington's medical services in his community.  *Jewett Orthopaedic Clinic, P.A. v. White*, 629 So. 2d 922,

**D.**    **AmeriPath Fails to Satisfy the Necessary Burden for Injunctive Relief**

Even if Dr. Wetherington remained an employee, AmeriPath had not breached its own contract, and the covenants at issue were narrowly drawn, AmeriPath has failed to meet the essential elements required to justify extraordinary relief.  *See GPS Industries,* 2010 U.S. Dist. LEXIS 17798, at *9-30 (denying preliminary injunction where defendant employer failed to show substantial likelihood of success on the merits or irreparable harm, where the balance of harm favored the former employee, and where the public interest was served by disallowing unreasonable restrictive covenants to unfairly restrain trade).

   **1.**    **AmeriPath Cannot Establish a Substantial Likelihood of Success on the Merits.**

As demonstrated above, there are substantial and hotly contested issues of fact regarding Dr. Wetherington's employment status and AmeriPath's breaches of the Agreement.  Consequently, AmeriPath cannot establish a *likelihood* that it will succeed on these issues, warranting a denial of the instant motion. *See Lotenfoe v. Pahk*, 747 So. 2d 422, 425 (Fla. 2d DCA 1999) (dissolving a temporary injunction and questioning whether an action to enforce restrictive covenants has a substantial likelihood of success where the employee presented evidence that the employer breached first); *Davis v. United States,* 422 F.2d 1139, 1142 (5th Cir. 1970) (reversing injunctive relief where it was impossible to determine disputed factual issues based on conflicting affidavits); *see also Kuczynski v. Lyra Mgmt.,* No. 08-62067, 2010 U.S. Dist. LEXIS

927 (Fla. 5th DCA 1993); *Lloyd Damsey, M.D., P.A. v. Mankowitz*, 339 So. 2d 282 (Fla. 3d DCA 1976).  AmeriPath fails to make such a showing.

4569, at *9 (S.D. Fla. Jan. 21, 2010) (Cohn, J.) (noting that a dispute over whether plaintiff was terminated created an issue of material fact precluding summary judgment). Further, because AmeriPath fails to show that the restrictive covenants at issue are enforceable and that, even if they are, Dr. Wetherington has breached them, injunctive relief should be denied.  *See GPS Industries,* 2010 U.S. Dist. LEXIS 17798, at *9, 23-24 ("In short, enough issues of fact remain to warrant against the use of injunctive relief.").

### 2.   AmeriPath Fails to Demonstrate that it Suffered Irreperable Harm and an Adequate Remedy at Law Exists.

#### (a)   *AmeriPath Fails to Show that Dr. Wetherington's Actions Have Caused Irreperable Harm.*

Even if AmeriPath could establish a substantial likelihood of success on the merits (which it cannot), the absence of a showing of irreparable harm to AmeriPath, standing alone, precludes entry of a preliminary injunction.  *See GPS Industries,* 2010 U.S. Dist. LEXIS 17798, at *25.

AmeriPath relies on a theory of direct solicitation to prove irreparable injury.  (TI Motion at 11-13, 15).  Specifically, AmeriPath alleges that Dr. Wetherington's solicitation of physician clients – if not enjoined – will undermine AmeriPath's relationships with its customers and goodwill within the community.  However, AmeriPath has provided *no evidence* that Dr. Wetherington solicited any active AmeriPath clients, and instead, the evidence in this case shows otherwise.  *See* (Katz Aff. ¶4; Moody Aff. ¶4; Pereyo Aff. ¶4; Pritzker Aff. ¶5; Schoenfeld Aff. ¶4); *see also Lotenfoe*, 747 So. 2d at 425 ("The fact that a patient voluntarily seeks out a doctor at his new practice does not establish direct solicitation.").  AmeriPath's conclusory and speculative affidavits fall far short of establishing direct solicitation.  *See Lotenfoe*, 747 So. 2d at 424 (rejecting allegations of

direct solicitation provided in verified complaint as failing to put forth facts sufficient to establish irreparable injury).

Additionally, AmeriPath fails to support its allegations of misappropriation of trade secrets and/or confidential information with *any* record evidence.  First, AmeriPath does not even claim Dr. Wetherington removed confidential information from the Atlanta Practice.  *See Liberty Am. Ins. Group, Inc. v. Westpoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1288 (M.D. Fla. 2002) (refusing to grant injunctive relief where plaintiffs had no evidence that defendant took trade secrets from the job site).  And second, the type of client information AmeriPath seeks to protect – client identities and client information -- are not trade secrets.  *Morgan Stanley DW, Inc., v. Frisby,* 163 F. Supp. 2d 1371, 1379 (N.D. Ga. 2001) (clients and client information of a financial broker are not proprietary and thus not protected as trade secrets); *GPS Industries,* 2010 U.S. Dist. LEXIS 17798, at *18-19 ("customer and pricing lists and business plans . . . do not constitute trade secrets or legitimate business interests").  This is especially true here where AmeriPath took no reasonable steps to protect this information.  (Wetherington Aff. ¶4).

(b)	An Adequate Remedy at Law Exists.

Even if AmeriPath could establish irreparable injury, AmeriPath fails to show that money damages would be an insufficient remedy in this action.  Despite AmeriPath's contention that it is "inherently difficult" to calculate damages for breach of restrictive covenants (*see* TI Motion at 14-15) the courts show no hesitation in denying injunctive relief in similar cases where the alleged damage can be measured in lost revenue.  *See GPS Industries,* 2010 U.S. Dist. LEXIS 17798, at *26-27 (harm to the employer could be

measured in money damages); *Morgan Stanley,* 163 F. Supp. 2d at 1376 (damages associated with a departing broker could be measured by reference to commissions the new firm derived from customers who switched firms) (*citing Sampson v. Murray*, 415 U.S. 61, 90 (1964)).  Indeed, AmeriPath's own witnesses seem to have no problem calculating its damages.  *See* DE 1(3) (Wampole Aff. ¶13 (noting a large client "generating approximately $300,000 revenue per year" abruptly stopped doing business with AmeriPath and the Atlanta Practice lost 30% of its revenue base); Cooper Aff. ¶3 ("AmeriPath's gross revenues from [a large client] were approximately $300,000")); DE 8(2) (Hankins Second Supp. Aff. ¶2 (calculating a 50% decrease in biopsies since Dr. Wetherington left and forecasting damages for the rest of 2010)).  As such, money damages can easily compensate AmeriPath for this type of loss, which can be measured in lost revenues.  *See Morgan Stanley,* 163 F. Supp. 2d at 1376 ("the mere loss of income, no matter how great, does not constitute irreparable harm").

### 3.    Injunctive Relief Would Not Serve the Public Interest.

This Court should deny AmeriPath's TI Motion because enjoining Dr. Wetherington from practicing medicine would not serve the public interest.  AmeriPath alleges that a temporary injunction in this case would protect contractual rights; however, this interest is outweighed by the public interest of preserving the trust and confidence between Dr. Wetherington and his physician clients.  *See Morgan Stanley,* 163 F. Supp. 2d at 1382 (describing the public interest in preserving relationships of personal trust and confidence).  Dr. Wetherington's physician clients choose Dr. Wetherington's services because he is trusted for his professionalism and knowledge. (Moody Aff. ¶3; Pritzker Aff. ¶3; Schoenfeld Aff. ¶3).  The public has an interest in preserving the physicians' right to choose Dr. Wetherington as their dermatopathologist.

*See Morgan Stanley,* 163 F. Supp. 2d at 1382 (recognizing the "importance of the 'public's ability to choose the professional services it prefers' ") (citations omitted)). Accordingly, the public interest would not be served by enjoining Dr. Wetherington from providing dermatopathological services.

### 4.    The Relative Hardships Weigh Against Injunctive Relief.

AmeriPath has not shown that any threatened injury to AmeriPath outweighs the clear harm in enjoining Dr. Wetherington from practicing medicine and making a living. AmeriPath fails to explain how the threatened injury in this case outweighs the harm of a temporary injunction.  (TI Motion at 3 n.3).  Any injury to AmeriPath, a national provider of pathology services owned by a publicly traded Fortune 500 company, Quest, is minimal compared to the harm a preliminary injunction against Dr. Wetherington, an individual physician, would cause.  *See Morgan Stanley,* 163 F. Supp. 2d at 1381-82 (former employer failed to show the balance of the harm weighed in favor of preliminary injunction where the former employer, a large international financial company, sought an injunction to deprive former employees of access to their entire client base).  As AmeriPath has failed to meet its burden to show the balance of the equities is in favor of granting injunctive relief, this Court should deny AmeriPath's motion.

### IV.    CONCLUSION

For the foregoing reasons, Dr. Wetherington respectfully requests that this Court deny AmeriPath's Motion for Temporary Injunction in its entirety.

Respectfully submitted this 25th day of May, 2010.

s/Charles A. Hawkins
Charles A. Hawkins
Fla. Bar No. 655260
Troutman Sanders LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia  30308
Telephone: 404-885-3000
Facsimile: 404-885-3900
E-Mail:  charles.hawkins@troutmansanders.com

and

Bruce Johnson
Fla. Bar No. 0262137
Scott D. Alexander
Fla. Bar No. 057207
Johnson, Anselmo, Murdoch, Burke, Piper, &
Hochman, P.A.
2455 East Sunrise Boulevard
Suite 1000
Fort Lauderdale, FL 33304
Telephone:  954-463-0100
Facsimile:   954-463-2444
E-Mail:  Johnson@jambg.com
            Alexander@jambg.com

Counsel for Defendant
Dr. Robert Wesley Wetherington

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 10-60766-CIV-COHN/SELTZER**

AMERIPATH, INC.,

        Plaintiff,

vs.

DR. ROBERT WESLEY WETHERINGTON, et al.,

        Defendants.

_____/

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing ***Defendant's Opposition to Plaintiff's Motion for Temporary Injunction*** has been electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to counsel of record for Plaintiff.

        Jonathan H. Rosenthal
        Malman, Malman & Rosenthal
        3107 Stirling Road
        Suite 101
        Fort Lauderdale, Florida 33312-8500
        jrosenthal@bellsouth.net

This 25th day of May, 2010.

        s/Charles A. Hawkins_____
        Of Counsel