UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-60766-CIV-COHN-SELTZER

AMERIPATH, INC.

      Plaintiff,

vs.

DR. ROBERT WESLEY WETHERINGTON,
an individual, CHRISTIAN STEVENS, an
individual, and DOES 1-10 inclusive,

      Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court on Plaintiff's Motion for Preliminary Injunction [DE 1-3] ("Motion").[1] The Court has considered the Motion, Defendant Christian Stevens Response [DE 17] ("Response"), the parties' related submissions, the evidence and argument presented on May 28, 2010 and August 26, 2010, the record, and is otherwise advised in the premises.

### I. BACKGROUND

AmeriPath, Inc. ("AmeriPath") is a national provider of pathology-related diagnostic services to physicians, hospitals, clinical laboratories and surgery centers across the United States. In this action, Ameripath alleges that Defendant Christian Stevens is engaging in unlawful competition with Ameripath in breach of the restrictive covenants contained in his employment agreement. Stevens was employed by

---

[1] Because Plaintiff's Motion was originally filed in state court, the Motion seeks a "temporary" rather than a "preliminary" injunction. For ease of reference, the Court will use the term "preliminary injunction" consistent with the Federal Rules of Civil Procedure and applicable case law.

AmeriPath as a senior sales manager from about September 4, 2001 until he resigned on April 20, 2010.  Stevens executed an Employment Agreement ("Agreement") with AmeriPath in September of 2001 in which he expressly agreed to

- maintain and protect the confidentiality of AmeriPath's confidential and proprietary information;

- not engage in a competing practice (either directly or indirectly) within 100 miles of any AmeriPath business for one year after his employment with AmeriPath;

- not solicit or divert business of AmeriPath's clients and to not solicit AmeriPath's employees for one year after his employment with AmeriPath.

See DE 1-3 (citing Agreement).

AmeriPath's Complaint was filed in state court in Broward County on April 26, 2010.  On May 11, 2010, Defendant Wetherington removed the case to this Court.  Prior to the filing of this action, there were already two related cases pending in the U.S. District Court for the Northern District of Georgia ("Georgia Actions").  In the Georgia Actions, Wetherington and Stevens each sought injunctive and declaratory relief regarding the enforceability of the covenants set forth in their respective employment agreements.  There is substantial overlap of facts and legal issues between those cases and AmeriPath's allegations in this case.

AmeriPath filed motions to transfer the Georgia Actions to this Court.  Pursuant to the first-filed rule, this Court stayed the case before it to allow the Georgia district courts to address AmeriPath's motions.  In Georgia, AmeriPath's motion to transfer the Wetherington case was denied; however, the motion to transfer the Stevens case was

granted pursuant to an exclusive venue provision in his employment agreement.[2]

Accordingly, on July 23, 2010 AmeriPath moved to lift the stay in this case and proceed against Stevens. The Court granted the motion and reset the hearing on AmeriPath's Motion for Preliminary Injunction and Stevens' Motion to Dismiss for Lack of Personal Jurisdiction for August 5, 2010. The Court granted the parties' first request to postpone the hearing to allow the parties to engage in settlement negotiations; the hearing was reset for August 26, 2010.[3] The parties stipulated to a temporary injunction until the hearing. See DE 44.[4]

1. **AmeriPath's Motion**

AmeriPath alleges that "Defendants are unlawfully competing against AmeriPath and causing irreparable harm." DE 8 at 3. AmeriPath argues that Defendants' breaches are "flagrant and clear cut." DE 1-3 at 6. According to AmeriPath, "Defendants are soliciting AmeriPath customers and employees, and establishing and running a competing business – Skinpath Solutions, Inc. – within 100 miles of AmeriPath's business." Id. AmeriPath states that Defendants' improper efforts "have proven devastatingly successful. On April 20 and 21, 2010, four long-standing AmeriPath customers over which Dr. Wetherington and Mr. Stevens had responsibility

---

[2] The provision provides as follows: "This Agreement shall be construed in accordance with the laws of the State of Florida and any proceeding arising between the parties in any manner pertaining or related to this Agreement shall, to the extent permitted by law, be held in Broward County, Florida."

[3] A second request to postpone the August 26, 2010 hearing was denied. See DE 47.

[4] On August 30, 2010, the Court entered an Order Denying Defendant Christian Stevens' Motion to Dismiss for Lack of Personal Jurisdiction.

3

and representing nearly one-third of AmeriPath's revenue base in Georgia abruptly withdrew all of their business from AmeriPath." Id. AmeriPath argues that if an injunction does not issue "Defendants' improper and illegal activities will continue unabated, and AmeriPath will suffer additional loss of business and goodwill that cannot be remedied by monetary damages." DE 8 at 3.

2.   **Stevens' Opposition**

Stevens argues that AmeriPath fails to meet the requirements to warrant a preliminary injunction. Stevens first challenges the validity of the restrictive covenants contained in the Agreement he entered into with AmeriPath in 2001. Stevens argues that such covenants are "extremely overbroad and are not reasonably tailored to protect AmeriPath's legitimate business interests." DE 17 at 3. For example, Stevens takes issue with the provision that "during the one-year period following the termination of his employment [Stevens] would not engage in the same or similar business (either directly or indirectly) within 100 miles of AmeriPath's business." Id. at 4. Stevens also challenges the provision which provides that Stevens would not divert business away from AmeriPath or solicit AmeriPath's clients or employees. Id. Stevens argues that such provisions are not enforceable under Georgia law. Likewise, Stevens argues that restrictive covenants also fail if the Court applies Florida law.

In addition, Stevens claims that "AmeriPath fails to show that money damages would be an insufficient remedy in this action." Id. at 8. Stevens emphasizes that the information he possesses constitutes client information rather than trade secrets. Id. at 7. Further, Stevens argues that the public interest of allowing a person to pursue their occupation weighs against granting injunctive relief. Finally, Stevens argues that the relative hardships also weigh against injunctive relief.

4

### 3      The August 26, 2010 Hearing

Mr. Stevens testified that his is currently employed as a courier by SkinPath Solutions, Inc. ("SkinPath"). Mr. Stevens' position as a courier involves picking up and dropping off samples at laboratories and doctor's offices. He testified that he is paid $150,000 per year for these services. Stevens stated that on April 20, 2011 – one year after his resignation from AmeriPath – he hopes to become a sales representative for SkinPath. Although Mr. Stevens acknowledged that he has had contact with current and/or potential clients of SkinPath, Stevens maintained that he did not engage in any solicitation and would merely refer such individuals to Dr. Wetherington.

Mr. Stevens' testimony that he works strictly as a courier is at odds with the Affidavit of Carlos Canton, the coordinator for the Institute of Immunoflourescence ("Institute"). See DE 1-4. Mr. Canton states that he was contacted by Mr. Stevens on April 28, 2010. Id. ¶ 3. According to Canton, Stevens stated that he was working with Dr. Wetherington and that he was interested in opening an account at the Institute on behalf of SkinPath. Id. Art Wampole, Vice President of Sales and Marketing for Dermpath Diagnostics (a division of AmeriPath), also provided testimony which calls some of Mr. Stevens' statements into question. In particular, Wampole testified that he has never heard of a courier making $150,000 per year. Wampole stated that the average hourly rate for a courier is between $8 to $15 per hour.

In addition, Mr. Wampole testified concerning the importance of restrictive convenants in his industry. Wampole explained that the business is relationship-based and that sales representatives, such as Stevens, serve as "extensions" of the physicians. Wampole further testified that the one-year time period is critical to allow time for replacement sales reps to build relationships with the customer base. Mr.

5

Wampole testified that one year is actually not a significant amount of time because a new salesperson will often need to build a relationship from scratch whereas the individual being replaced has established a bond of years. To illustrate this point, Wampole discussed the intense loyalty and high-degree of control that sales reps with established relationships can exert over their clients. For example, he estimated that Mr. Stevens had such control over approximately 30% of his client base.

Mr. Wampole discussed two additional factors that make restrictive covenants necessary: intense training and access to confidential information. Wampole testified that sales representatives receive an extensive amount of both formal and on-the-job training. He also testified that with respect to AmeriPath, the representatives are provided with reports which detail client statistics such a volume and profitability. Wampole explained that these reports are confidential and contain non-public information. In addition, he testified that such reports would be of great use to competitors because the reports would allow companies to target AmeriPath's high-profit and high-volume customers. Mr. Wampole also testified that AmeriPath's takes steps to maintain the confidentiality of such information by only providing the reports to sales reps and labs, keeping its files secure and including restrictive covenants in all employment agreements.

Wampole then discussed the loss of business that AmeriPath has experienced since Mr. Stevens and Dr. Wetherington left AmeriPath. Wampole testified that AmeriPath used to process approximately 350-400 samples per day. Now, the samples processed have decreased to about 50 per day. The Court admitted into evidence the Second Supplemental Affidavit of Ronald C. Hankins which supports the financial difficulties that have recently beset AmeriPath. See DE 8-2. Specifically, the Hankins

6

Affidavit states that "a comparison between the baseline number of average daily biopsies prior to the non-renewal of Dr. Wetherington's contract and the average number of biopsies lost between May 3 and May 12, 2010 shows a decrease in biopsies of over 50%." Id. ¶ 2. Wampole estimated that approximately 50-60% of this loss can be attributed to the competing business run by Wetherington, although Wampole acknowledged that the number is difficult to quantify. Further, Hankins predicts that "[e]ven assuming that this volume decline remains at the 50% level, the anticipated revenue loss through year's end would be over $2.7 million." Id. Given these losses, Wampole questioned whether AmeriPath's operation in Georgia will ever be able to recover.

In closing arguments and facing an adequate showing by AmeriPath, Mr. Stevens' counsel offer only a cursory rebuttal of whether the requirements for injunctive relief are met. Instead, his counsel focused primarily on the argument that Stevens' Agreement with AmeriPath is no longer valid.

## II. ANALYSIS

In order to obtain a preliminary injunction, AmeriPath must establish the following four elements: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendants; and (4) granting the preliminary injunction will not disserve the public interest. Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994).

Because a "preliminary injunction is an extraordinary and drastic remedy," it is "not to be granted until the movant clearly carries the burden of persuasion as to the

four prerequisites." Id. (quoting Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990)); see also McDonald's Corp. v. Roberts, 147 F.3d 1301, 1306 (11th Cir. 1998). Also, the Court may only enter a preliminary injunction if the movant gives security in an amount the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65(c).

Here, the Court finds that Plaintiff has made the requisite showing. It is undisputed that Mr. Stevens is working with a competitor. While Mr. Stevens claims that he works only as a courier, his salary is not commensurate with that position. This implies that Stevens is also being compensated for attributes, such as his industry knowledge and client relationships, which are not found in most couriers, who in turn receive far less compensation. Although Stevens stated that any calls he received from customers were merely referred to Dr. Wetherington, this testimony begs the question of why such individuals would contact a "courier" in the first place.

In addition, AmeriPath demonstrated that its business has suffered a dramatic downturn after the departure of Wetherington and Stevens. Based on these facts as well as those discussed above, the Court finds that AmeriPath has met its burden to show a substantial likelihood of success on the merits. "The focus of preliminary injunctive relief is on maintaining long standing relationships and preserving the goodwill of a company built up over the course of years of doing business . . . ." Variable Annuity Life Ins. Co. v. Hausinger, 927 So. 2d 243, 245 (Fla. Dist. Ct. App. 2d Dist. 2006) (quoting N. Am. Prods. Corp v. Moore, 196 F. Supp. 2d 1217, 1230-31 (M.D. Fla. 2002)). To be sure, AmeriPath was not able to quantify damages with the

8

degree of certainty that would be required at trial. However, the showing made at this early stage convinces this Court that, after conducting full discovery in this case, there is a substantial likelihood that AmeriPath will be able to show at least some quantum of damages.

The Court also finds that AmeriPath has demonstrated a threat of irreparable harm. Given the significant decline in business and threat to its client base and good will, AmeriPath easily meets this element. See Lefebvre v. Weiser, 967 So. 2d 405, 406 (Fla. Dist. Ct. App. 3d Dist. 2007) (finding no adequate remedy at law where viability of business was at risk and there was a loss of good will); Merrill Lynch Pierce Fenner & Smith, Inc. v. Hagerty, 808 F. Supp. 1555, 1559 (S.D. Fla. 1992) ("Florida courts have repeatedly held that injunctive relief is appropriate where customer lists are involved.").

The Court also finds that the threat to AmeriPath's business outweighs the harm imposed on Stevens by a preliminary injunction. Although Mr. Stevens will have to give up his courier job with SkinPath, AmeriPath will be required to provide a bond for a portion of Stevens' salary through April 20, 2011. Accordingly, the harm experienced by Stevens will be diminished should he ultimately prevail at trial.

Finally, the Court finds that the public interest will not be disserved by injunctive relief under these circumstances. See Pitney Bowes, Inc. v. Acevedo, No. 08-21808, 2008 U.S. Dist. LEXIS 61194 (S.D. Fla. July 28, 2008) ("[T]he public has a cognizable interest in the protection and enforcement of contractual rights."); Fountainview Assoc. v. Bell, 214 So. 2d 609, 610 (Fla. 1968) (holding that public policy requires that in the management of corporate affairs a corporate officer serve first the corporate interests

and not his own); Lefebvre, 967 So. 2d at 406 (same).  Under Florida law, the restrictive covenants relied on by AmeriPath are enforceable.  See, e.g., Fla. Stat. § 542.335(1); Fulford v. Drawdy Bros. Constr., 903 So. 2d 1007 (Fla. Dist. Ct. App. 4th Dist. 2005) (affirming temporary injunction with respect to 18 month non-compete provision covering three counties); Supinski v. Omni Healthcare, P.A., 853 So. 2d 526 (Fla. Dist. Ct. App. 5th Dist. 2003) (affirming district court decision to enforce a non-compete covenant in an employment agreement); Grant v. Robert Half Int'l, Inc., 597 So. 2d 801 (Fla. Dist. Ct. App. 3d Dist. 1992) (enforcing one year non-compete provision within 50 miles of any office where the defendant had worked).  The Court will, however, limit the enforcement to within 100 miles of only those AmeriPath locations where Stevens actually worked.

At the hearing, Mr. Stevens for the first time challenged the validity of the Agreement he entered into with AmeriPath in 2001.  Essentially, Stevens argued that the Agreement was no longer valid because Quest Diagnostics, Inc. ("Quest") acquired AmeriPath in 2007.  Therefore, Stevens argues that he was no longer operating under the Agreement and it was incumbent on Quest to enter into a new contract with Stevens.  This position stands in stark contrast to the one taken by Stevens in his prior submission.  In opposing the instant Motion, Mr. Stevens argued that the provisions contained in the 2001 Agreement should be stricken as overbroad.  See DE 17.  Moreover, in Case No. 10-cv-61286 now before this Court, Stevens filed a Complaint wherein he alleges that "Plaintiff is a party to an Employment Agreement . . . with AmeriPath which, as of 2009, paid him an annual salary and bonus exceeding $130,000."  See Case No. 10-cv-61286, DE 1 ¶ 5 (attaching the 2001 Agreement as

Exhibit A). Further, Stevens alleges that "[o]n or about April 17, 2010, AmeriPath Vice President . . . sent Stevens a new contract to sign which contained different restrictive covenants from the existing Agreement." Id. ¶ 17 (emphasis added). Therefore, the Court rejects Stevens' argument that the Agreement is invalid and a preliminary injunction will be entered.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Preliminary Injunction [DE 1-3] is **GRANTED**.
2. Plaintiff shall submit a proposed preliminary injunction no later than **September 9, 2010**.[5]
3. Plaintiff shall provide security in the amount of $60,000 by no later than **September 15, 2010**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 3rd day of September, 2010.

_____
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF

---

[5] Until the Court enters a preliminary injunction, the Stipulated Temporary Injunction shall remain in effect. See DE 44.