UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-60766-CIV-COHN-SELTZER

AMERIPATH, INC.

      Plaintiff,

vs.

DR. ROBERT WESLEY WETHERINGTON,
an individual, CHRISTIAN STEVENS, an
individual, and DOES 1-10 inclusive,

      Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY AGAINST CHRISTIAN STEVENS

**THIS CAUSE** is before the Court on Plaintiff AmeriPath, Inc.'s ("AmeriPath's")

Motion for Summary Judgment as to Liability Against Defendant Christian Stevens [DE

82] ("Motion"). The Court has considered the Motion and related submissions, including

AmeriPath's Memorandum of Law in Support of the Motion [DE 82-4] ("Memorandum"),

Mr. Stevens' Response in Opposition to the Motion [DE 88] ("Opposition"), AmeriPath's

Reply in support of the Motion [DE 92] ("Reply"), the parties' related submissions, the

record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

AmeriPath is a national provider of pathology-related diagnostic services to

physicians, hospitals, clinical laboratories and surgery centers across the United States.

Affidavit of Ronald Hankins [DE 1-3 at 27-29] ("Hankins Affidavit") ¶ 3. It employs

pathologists and scientists who provide medical diagnostic services in outpatient

laboratories owned, operated, and managed by AmeriPath, as well as in hospitals and

ambulatory surgical centers.  Id.  AmeriPath employed Mr. Stevens as a sales Territory

Manager from September 4, 2001 until he resigned on April 20, 2010.  Deposition of

Christian Stevens [DE's 84-1, 84-2] ("Stevens Deposition") at 34-36, 57.  When

AmeriPath hired Mr. Stevens, the parties entered into a written employment agreement,

in which Mr. Stevens agreed to certain non-competition and non-solicitation obligations

as conditions of his employment.  Stevens Dep. at 44; Employment Agreement [DE 84-

3 at 2-8].  Specifically, as part of the "Confidential Information and Noncompetition

Covenant," the Employment Agreement, provided that Mr. Stevens agreed that he

would not directly or indirectly:

- "Operate, organize, maintain, establish, manage, own or participate in, or in any manner whatsoever, . . . have any interest in, whether as owner, operator, partner, stockholder . . ., director, trustee, officer, lender, employee, principal, agent, consultant or otherwise, any other business or venture providing the same or similar Business as provided by the Company that is located within a radius of One Hundred (100) miles from any place where the Company is engaged in the Business . . .," Emp't Agreement ¶ 6(c)(i);

- "Divert business from the Company, its affiliates and its successors and assigns,"id. ¶ 6(c)(ii); or

- "Solicit business from or divert the business of any client or account of Company, its affiliates and its successors and assigns, or attempt to convert such clients or accounts to other methods of using the same or similar business as are provided by Company, its affiliates and its successors and assigns," id. ¶ 6(c)(iii);

- "either during [his] employment or afterward, divulge, reveal or communicate any Confidential Information or use any Confidential Information for [his] benefit or for the benefit of others," id. ¶ 6(a).

Before beginning work at AmeriPath, Mr. Stevens had never before worked in

the medical industry, nor did he have any significant sales experience.  Stevens Dep. at

25-27.  While at AmeriPath, Mr. Stevens initially worked in Alabama, where he covered

2

the Alabama and Mississippi territories, and for a small time, the Florida panhandle territory as well. Id. at 36-37. The company eventually transferred him to AmeriPath's Atlanta dermatopathology practice in Marietta, Georgia, to serve as sales manager there. Id. at 37. AmeriPath provided Mr. Stevens with specialized training and helped him develop relationships with doctors in his territory. Id. at 60, 63, 94, 96. As the sales manager responsible for the entire state of Georgia, id. at 68-69, Mr. Stevens was responsible for making sales calls on doctors in that state, id. at 72-73. According to Mr. Stevens, he "was the top sales guy at AmeriPath for years." Id. at 250.

The Director of AmeriPath's Marietta laboratory was Dr. Robert Wesley Wetherington. Id. at 46. On April 13, 2010, AmeriPath informed Dr. Wetherington that AmeriPath would not renew Dr. Wetherington's contract for the next year. Id. at 150-51. Thereafter, Dr. Wetherington founded a new company, SkinPath Solutions, Inc. ("SkinPath"). Id. at 150-51, 170. SkinPath was a direct competitor with AmeriPath. Id. at 171; Order Granting Plaintiff's Motion for Preliminary Injunction [DE 53] at 8. Thus, in anticipation of the competition with SkinPath, AmeriPath began its efforts to retain its existing customers. Stevens Dep. at 171. Mr. Stevens assisted in certain ways, including by developing client lists. Id.

Just one week after Dr. Wetherington founded SkinPath, on April 20, 2010, Mr. Stevens resigned from employment with AmeriPath, without providing any advance notice. Id. at 173, 182. Immediately thereafter, Mr. Stevens applied for a sales and marketing position at SkinPath, id. at 247-49; SkinPath Employment Application [DE 84-3 at 24-26], and began working there, Stevens Dep. at 250-51. While at SkinPath, Mr. Stevens played an integral role in creating and developing the company. See id. at

3

273-75, 278, 281-82; Christian Owens Stevens Facebook Page [DE 84-2 at 28]; Christian Owens Stevens Website [DE 84-3 at 29-39]. He worked in customer service for a time, and later worked as a courier with responsibility for transporting lab specimens for SkinPath. Stevens Dep. at 250, 251-52, 254-55; 256. While working at SkinPath, Mr. Stevens also had contact with several doctors, including former AmeriPath customers who were interested in bringing their business to SkinPath. Id. at 240-41, 252-54, 262, 284-86, 291-93, 296-97, 297-98, 299-300, 329-30, 341-42, 346; Letter to Dr. Russell Burken [DE 84-3 at 51]; Email to Herb Alexander [DE 84-3 at 40]; June 7, 2010 Email re: "Dr.'s Cole and NAD" [DE 84-3 at 48]. Mr. Stevens referred doctors to Dr. Wetherington and developed lists of other current AmeriPath customers and prospective SkinPath customers for Dr. Wetherington to contact. Stevens Dep. at 270-72, 288-89; Email re: "Key contacts for WW to call" [DE 84-3 at 27]; Email re: "Comprehensive list of doctors we need to contact" [DE 84-3 at 42]; Email re: "Contacts w/numbers" [DE 84-3 at 43]. He also participated in SkinPath's marketing efforts by hosting a party for a group of medical residents to generate future business for SkinPath, Stevens Dep. at 295-96, 350-52; May 3, 2010 Email to Baker and Wetherington [DE 84-3 at 55], and by drafting a description for SkinPath's prospective website, Draft Description [DE 84-3 at 49-50].

Shortly after Mr. Stevens' resignation, on April 20, 2010, AmeriPath lost one of its key customers, whose account was worth over $300,000 annually. Affidavit of Art Wampole [DE 1-3 at 55-60] ("Wampole Affidavit") ¶ 13; Affidavit of Lynn Cooper [DE 1-3 at 87-88] ("Cooper Affidavit") ¶ 3. Within the next two days, AmeriPath also lost three of its other well-established customers. Wampole Aff. ¶ 14. Dr. Wetherington and Mr.

4

Stevens had managed all four customers. Id. These customers' departures, over the two-day span of April 20 to 21, 2010 represented a 30% revenue base loss for AmeriPath's Atlanta-based business. Id.

Accordingly, AmeriPath's Complaint [DE 1-2 at 4-23] brings claims against Mr. Stevens for breach of contract (Count VIII) and declaratory relief (Count IX).[1] Also at issue are the claims Mr. Stevens brought against AmeriPath for declaratory judgment (Count One) and injunctive relief (Count Two) in Case No. 10-cv-61286, a related case that was consolidated with the instant action, see Complaint in 10-cv-61286 [DE 1 in 10-cv-61286]; Order of Consolidation [DE 63].[2] On January 28, 2011, AmeriPath filed the instant Motion, seeking summary judgment against Mr. Stevens as to liability on AmeriPath's claims against Mr. Stevens as well as summary judgment against Mr. Stevens on his claims against AmeriPath. Mot. at 1; Mem. at 1.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[1] The Complaint also brings various counts against Dr. Wetherington, but this case has been stayed against Dr. Wetherington due to the pending case between Dr. Wetherington and AmeriPath in the Northern District of Georgia. See Order Clarifying Stay and Denying Motions [DE 71]. Therefore, the counts against Dr. Wetherington are not at issue in the instant Motion.

[2] AmeriPath also brought a breach of contract counterclaim against Mr. Stevens in Case No. 10-cv-61286. See AmeriPath, Inc.'s Answer, Affirmative Defenses, and Counterclaim at 8-13 [DE 30 in Case No. 10-cv-61286-JIC] ("AmeriPath's Counterclaim"). Because the counterclaim from Case No. 10-cv-61286 is substantively identical to the breach of contract claim AmeriPath originally asserted against Mr. Stevens in the instant action, the Court will consider both claims together.

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must show the Court that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

6

## III. ANALYSIS

AmeriPath seeks summary judgment in its favor, arguing that Mr. Stevens breached his Employment Agreement by violating restrictive covenants contained in that contract, and that these covenants were both valid and enforceable.  Mr. Stevens responds that AmeriPath is not entitled to summary judgment because it has not presented a *prima facie* breach of contract case, and because there are factual issues remaining as to whether there was a material breach of contract and whether the restrictive covenants are valid and enforceable.  As discussed below, the Court finds that the undisputed evidence establishes that Mr. Stevens breached his Employment Agreement with AmeriPath, that the restrictive covenants are valid and enforceable, and that AmeriPath is entitled to summary judgment as a matter of law on these issues. Therefore, the Court will enter summary judgment as to liability on AmeriPath's breach of contract count and declaratory judgment count, as well as on Mr. Stevens' declaratory judgment and injunctive relief counts.

### A. Breach of Contract

Under Florida law, a breach of contract requires "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." Textron Fin. Corp. v. Lentine Marine, Inc., 630 F. Supp. 2d 1352, 1356 (S.D. Fla. 2009) (citing Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006)).  The Court will discuss each element in turn.

### 1. Contract

A breach of contract claim requires that a valid contract exist. <u>Textron</u>, 630 F. Supp. 2d at 1356. The Employment Agreement in this case constituted a valid contract. Neither party contends otherwise. Thus, AmeriPath meets the first element required for a breach of contract.

### 2. Breach

A breach of contract claim also requires a breach of the contract. <u>Textron</u>, 630 F. Supp. 2d at 1356. Such a breach must be material. <u>Friedman v. New York Life Ins. Co.</u>, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008). The facts demonstrate that Mr. Stevens materially breached three provisions under the Employment Agreement's "Confidential Information and Noncompetition Covenant." <u>See</u> Emp't Agreement ¶ 6.

First, the Employment Agreement prohibited Mr. Stevens from engaging in any competing practice within 100 miles of AmeriPath for one year after the termination of his employment. Emp't Agreement ¶ 6(c)(i). Mr. Stevens violated this agreement when, in April 2010, immediately after leaving AmeriPath, he began participating in SkinPath's business, a business in direct competition with AmeriPath. Mr. Stevens "does not deny that he did participate in the same or similar business when he initially began with SkinPath on April 22, 2010." Resp. at 13. Mr. Stevens also confirmed at his deposition that SkinPath was located within 100 miles of AmeriPath's Marietta lab. Stevens Dep. at 251.

Second, the Employment Agreement prohibited Mr. Stevens from soliciting AmeriPath's clients or diverting these clients' business for one year after the termination of his employment with AmeriPath. Emp't Agreement ¶¶ 6(c)(ii), 6(c)(iii). Mr. Stevens

8

breached this section of the agreement when he forwarded calls from AmeriPath

customers interested in SkinPath to Dr. Wetherington, visited doctors' offices, and

made written statements to doctors to ensure they sent their business to SkinPath. He

also breached this section when he hosted a party for medical residents to generate

SkinPath business, and when he wrote a description of SkinPath's business for its

website to use in marketing. Further, he developed lists of AmeriPath customers for Dr.

Wetherington to use in soliciting clients for SkinPath.

Finally, the Employment Agreement prohibited Mr. Stevens from divulging

AmeriPath's confidential and proprietary information that Mr. Stevens received as a

result of his employment with the company. Emp't Agreement ¶ 6(a). The Employment

Agreement defines "confidential information" to include "the identity of the Company's

customers or clients." Id. Mr. Stevens divulged confidential information when he

created client lists of AmeriPath customers, which he then used to assist SkinPath to

obtain business from those clients. In responding to the Motion for Summary

Judgment, Mr. Stevens argues that there is no evidence that he used or disclosed

AmeriPath's confidential and proprietary information to establish and participate in

SkinPath because Mr. Wampole did not know of any such evidence. Resp. at 15-16

(quoting Rough Draft Transcript Excerpt from Deposition for Art Wampole [DE 89-1]

("Wampole Deposition") at 26). However, despite Mr. Wampole's lack of knowledge

regarding such evidence, the evidence does exist. Specifically, Mr. Stevens disclosed

AmeriPath's client identities and information to SkinPath and Dr. Wetherington for the

purpose of benefitting SkinPath. Mr. Stevens does not dispute that he created and

used the client list or that he had access to AmeriPath's confidential information while he was employed there.  Reply at 10; Resp. at 3; Emp't Agreement ¶ 6(a).  Therefore, the evidence does establish that Mr. Stevens breached this portion of the Employment Agreement in addition to the above-mentioned portions.  Thus, AmeriPath meets the second element required for a breach of contract.

Mr. Stevens does not dispute these facts, but rather argues, "Whether or not, Christian Stevens participation with Skin Path for a few months was a 'material' breach of his employment contract, in light of all circumstances, is a question of fact and should not be decided as a matter of law."  Resp. at 14.  However, there are no genuine issues of disputed fact that preclude summary judgment here.  Mr. Stevens declares that he "never diverted or solicited any business away from AMERIPATH," Resp. at 13, but he does not otherwise contest any facts.  In fact, he explicitly concedes that he participated with SkinPath between April 22, 2010 and September 3, 2010.  Id.  He argues that "AMERIPATH has no evidence STEVENS participation with SkinPath harmed AMERIPATH in any way," id., and that "AMERIPATH offers no evidence to establish that any of the customers it lost, ever viewed [or] relied upon any of these emails, Facebook[, or] web pages," id.  Yet, even the sole fact that he participated with SkinPath is enough to prove breach of contract, see Emp't Agreement ¶ 6(c)(i), and Mr. Stevens admits that he participated with SkinPath, see Resp. at 13.  Therefore, the undisputed facts demonstrate that Mr. Stevens breached the Employment Agreement.

### 3. Damages

Third, a breach of contract claim requires proof of damages.  Textron, 630 F. Supp. 2d at 1356.  AmeriPath suffered damages in the form of lost business.

Specifically, AmeriPath lost four customers over a two-day span from April 20 to April 21, 2010, representing a 30% revenue base loss for AmeriPath's Atlanta-based business. Wampole Aff. ¶¶ 13-14.

Mr. Stevens argues that AmeriPath failed to prove the damages element because it did not offer proof that it lost business as a result of Mr. Stevens' breach of contract. Resp. at 12. Mr. Stevens emphasizes that Mr. Wampole, AmeriPath's Vice President of Marketing & Sales, testified at his deposition, that he did not know why AmeriPath's customers left and that customers often follow doctors who leave one laboratory for another. Id. (citing Wampole Dep.). However, the sole fact that Mr. Wampole did not know this information does not render the remainder of the evidence worthless. The evidence in this case shows that Mr. Stevens actively participated in SkinPath's business and encouraged AmeriPath customers to leave AmeriPath and bring their business to SkinPath. Accordingly, AmeriPath has demonstrated that it suffered at least some damages as a result of Mr. Stevens' breach.

Mr. Stevens also highlights that Mr. Wampole could not provide a specific monetary figure representing the damages AmeriPath suffered from losing customers as a result of Mr. Stevens' breach. Resp. at 12. However, Mr. Wampole did testify at his deposition that AmeriPath suffered "roughly" $2 million in damages as a result of Mr. Stevens' breach. Wampole Dep. at 8. Regardless, AmeriPath's Motion seeks summary judgment only with respect to liability, not the amount of damages. A plaintiff moving for summary judgment as to liability only does not need to prove the specific amount of damages to prevail. See Flamingo Hotel Co. v. Jay Glynn Tax Advisor Co., 170 So. 2d 78, 79 (Fla. Dist. Ct. App. 1964) (trial court correctly granted partial

11

summary judgment as to liability even where conflicting evidence existed as to damages).  Conflicting evidence as to amount of damages does not raise a genuine issue as to liability.  Id.  The plaintiff only needs to prove some amount of damage, City of Miami Beach, Fla. v. Carner, 579 So. 2d 248, 253 (Fla. Dist. Ct. App. 1991), and AmeriPath has done so here.  Thus, AmeriPath meets the third element required for a breach of contract claim.

Accordingly, because the Employment Agreement is a valid contract, Mr. Stevens breached certain provisions contained in that contract, and AmeriPath incurred some amount of damages as a result of Mr. Stevens' breach, see Textron, 630 F. Supp. 2d at 1356, the Court will enter summary judgment in AmeriPath's favor as to liability on the breach of contract claim.  This ruling also resolves the issue of liability on the breach of contract claim AmeriPath brought against Mr. Stevens in its Counterclaim in the consolidated case, Case No. 10-cv-61286.  However, the amount of damages AmeriPath incurred as a result of the breach remains undetermined at this time.

### B. Declaratory Relief

In the declaratory relief count, AmeriPath seeks a judicial determination that the non-compete and non-solicit provisions in the Employment Agreement are enforceable and binding.  In the Preliminary Injunction Order [DE 57], the Court found that "the restrictive covenants contained in Stevens' employment agreement with AmeriPath are valid and enforceable."  Prelim. Inj. Order at 1.  The facts before the Court at this time confirm that this ruling was correct.

Florida Statutes § 542.335 governs the validity of restrictive covenants.  The

12

statute provides, in part, that in an action concerning a restrictive covenant's

enforceability:

> (a)    A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought.
>
> (b)    The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant.
> . . .[and]
>
> (c)    A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction.

Fla. Stat. § 542.335(1).  All of these factors are present here.

First, the restrictive covenants at issue are contained in the Employment

Agreement that Mr. Stevens signed.  See Emp't Agreement ¶ 6; Fla. Stat. §

542.335(1)(a).  Second, AmeriPath's Motion pleads the existence of a number of

legitimate business interests justifying the restrictive covenants, including: substantial

customer relationships, Fla. Stat. § 542.335(1)(b)(3); customer goodwill, Fla. Stat. §

542.335(1)(b)(4); confidential and proprietary business information, Fla. Stat. §

542.335(1)(b)(2); and trade secrets, Fla. Stat. § 542.335(1)(b)(1).  See Mem. at 13-14;

Fla. Stat. § 542.335(1)(b); see also Fla. Stat. § 542.335(1)(b)(1)-(4) (listing trade

secrets, confidential business information, substantial customer relationships, and

customer goodwill as included in the term "legitimate business interests").  Finally,

AmeriPath has demonstrated that the restrictive covenants were necessary to protect

these legitimate business interests.  See Mem. at 14.  AmeriPath has therefore

established a *prima facie* case that the restrictive covenants are valid and enforceable

under Florida law.  See Fla. Stat. § 542.335(1); Fulford v. Drawdy Bros. Constr., 903

So. 2d 1007 (Fla. Dist. Ct. App. 4th Dist. 2005) (affirming temporary injunction with

respect to 18 month non-compete provision covering three counties); Supinski v. Omni

Healthcare, P.A., 853 So. 2d 526 (Fla. Dist. Ct. App. 5th Dist. 2003) (affirming district

court decision to enforce a non-compete covenant in an employment agreement); Grant

v. Robert Half Int'l, Inc., 597 So. 2d 801 (Fla. Dist. Ct. App. 3d Dist. 1992) (enforcing

one year non-compete provision within 50 miles of any office where the defendant had

worked).

Section 542.335(1)(c) also sets forth that when the "person seeking enforcement

of the restrictive covenant establishes prima facie that the restraint is reasonably

necessary,":

> the person opposing enforcement has the burden of establishing that the
> contractually specified restraint is overbroad, overlong, or otherwise not
> reasonably necessary to protect the established legitimate business interest
> or interests. . . . [and] [i]f a contractually specified restraint is overbroad,
> overlong, or otherwise not reasonably necessary to protect the legitimate
> business interest or interests, a court shall modify the restraint and grant only
> the relief reasonably necessary to protect such interest or interests.

Fla. Stat. § 542.335(1)(c).  In granting the preliminary injunction, the Court limited the

enforcement of the restrictive covenants to "within 100 miles of only those AmeriPath

locations where Stevens actually worked."  Order Granting Prelim. Inj. at 10.  The Court

maintains that this limit still applies and that the limit renders the covenants neither

overbroad nor unreasonable.  Mr. Stevens argues that there are questions of fact as to

whether the covenants are reasonable or overly broad, but he points to no specific fact

that would preclude summary judgment at this stage.  AmeriPath is therefore entitled to

summary judgment as a matter of law on its declaratory judgment count.

Further, in Count One of his Complaint in Case No. 10-cv-61286, Mr. Stevens seeks declaratory judgment that the restrictive covenants are overbroad and invalid. See Compl. in 10-cv-61286. In Count Two, Mr. Stevens requests an injunction enjoining AmeriPath from seeking to enforce the covenants. See id. Because the Court finds that the restrictive covenants contained in the Employment Agreement are valid and enforceable, AmeriPath is also entitled to summary judgment as a matter of law on Mr. Stevens' declaratory judgment and injunctive relief counts.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff AmeriPath, Inc.'s Motion for Summary Judgment as to Liability Against Defendant Christian Stevens [DE 82] is **GRANTED**. Summary judgment as to liability is hereby entered in favor of AmeriPath and against Mr. Stevens on the following counts:

1. Count VIII (breach of contract) and Count IX (declaratory relief) in AmeriPath's Complaint [DE 1 in Case No. 10-cv-60766];

2. Count One (breach of contract) in AmeriPath's Counterclaim [DE 30 in Case No. 10-cv-61286];

3. Count One (declaratory judgment) and Count Two (injunctive relief) in Mr. Stevens' Complaint [DE 1 in Case No. 10-cv-61286].

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this _4th_ day of April, 2011.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF

15